Ruefin, J.
 

 The cause is brought here under the new provision in the Revised Code, ch. 32, sec. 2.1, which, it may be feared, will prove inconvenient — -especially in a case of this sort, where a decision for one of the defendants probabty disposes, virtually, of the cause as to both, without its being known what state the answer may put the case in as to the other defendant. But as the law is clear, the Court must assume the jurisdiction.
 

 The demurrer raises the question, -whether the bill makes a case fit for an interpleading bill? In
 
 Shaw
 
 v.
 
 Carter,
 
 8 Paige 339, Chancellor Walworth says, that if a bill states a case, which shows that one defendant is entitled to the duty, and the other is not, both may demur; the one, because the plaintiff has a defence at law against him ; the other, because the plaintiff has no legal or equitable defence against him. Therefore he warns plaintiffs, in bills of this kind, of the dan
 
 *223
 
 ger of stating, affirmatively, the facts on which the legal rights of the defendants depend, since the foundation of the relief asked, is, that the plaintiff is, from ignorance of the rights^ and from doubts of the facts, unable to ascertain to which of the defendants he is to account. Without adverting minutely to the several allegations in the bill, it is sufficient to remark, that there are affirmative statements in it, sufficient to show that, in truth, neither of the defendants has a right to this money, and, therefore, that the bill must be dismissed on demurrer; for, to sustain it, would be requiring the defendants to engage in a litigation, by which neither of them can gain, and both must lose time and costs.
 

 It is apparent that the claim of Swain is unfounded. After a sale to the slave, he cannot treat the property as remaining in himself, and claim the price for which the plaintiff sold the jackass, as money had and received to his use. If the negro paid the price, manifestly the seller, with the price in his pocket, could not recover the thing also, from the person to whom the negro had sold it, nor, by consequence, the price received from the negro’s vendee. If the negro did not pay the purchase-money, and was trusted for it, there would be the same result; for, by the sale and delivery — an executed contract — the seller divested himself of the property, and no equity or lien would follow the property, whether it he in the slave or the master, or the vendee of the slave, but the seller can look only to the slave, whom he trusted. But, in truth, the law makes such dealings with a slave unlawful and criminal; arid a person .thus dealing by an executed act of sale to a slave, cannot found an action on bis own illegal act, upon a suggestion that the sale was ineffectual to pass the property. The purpose of the law is to suppress such transactions, and, therefore, it will give no aid to a party to them touching any matter growing out of the breach of the law. If it be said, that this sale might have been by consent of the master; the reply is, that then the sale would not be void, but the property would pass and vest either in the slave or the master, and in either way it would be divested out of the sel
 
 *224
 
 lér.' So that in no conceivable manner can any right vest in Swain upon which he can have an action for the thing, or the proceeds of’the sale of it.
 

 'Then, as to the title of Stanly. ' It is an indictable misdemeanor in the owner of a slave to hire to him his own time, or let him go at large as a freeman, exercising his own discretion in the employment of his time. The purpose of the law is to keep a slave always under the dominion and immediate ordering of the master. It would completely defeat those provisions to allow the owner actions against third persons founded on dealings with the slave in that situation, upon the idea that the earnings of the slave, or the things bought by. him, belong, in law, to the master. If the master can get hold of the earnings, or tilings that are called the property of the slave, he may, and of course he can keep them ; for there is none to deprive him of them. But he ought not to recover •from another, things sold to him by the slave, while the owner was illegally allowing him to act as a freeman, nor a debt, so to speak, due to the slave upon transactions during the period of
 
 quasi
 
 freedom. The law would be false to itself, and to good faith towards third persons, if it gave such an action, and thereby held out inducements to breaches of the law, and deceptions on the public, who deal with a slave allowed by the owner thus to hold himself out as a freeman. Hence, in such cases, the owner cannot impugn the executed contracts of the slave, nor enforce those that are executory. Although the slave cannot recover this money from the plaintiff, yet that does not authorise the owner to do so. The slave is concluded by his incapacity, and the owner by his demerits. It follows, that in this case, as in many others, the maxim
 
 potior est conditio
 
 possidentis, applies; and the plaintiff, while he cannot maintain this bill, may hold the fund, since ‘neither of the defendants can get it from him. The demurrer ■ought, therefore, to be sustained, and the bill dismissed with ■costs as to Stanly. As that defendant declines interpleading, and it cannot now be decreed, the plaintiff must- have leave to withdraw his deposit,.and be at liberty, notwithstanding the
 
 *225
 
 decree, to set up all defences in any litigation be may here1after have, touching this fund, with the defendants, or either, of them. This opinion must be certified to the court of equity with instructions to proceed in the eause in conformity to it.
 

 Per Curiam, , Decree accordingly.